UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FOR ONLINE PUBLICATION ONLY

---------------------------------------------------------------- X
EMILE MARK DIXON,

                Plaintiff,

    - against -

MICHAEL ZENK, et al.,

                Defendants.
---------------------------------------------------------------- X

MEMORANDUM AND ORDER

05 CV 3127 (JG)

A P P E A R A N C E S :

    EMILE MARK DIXON
        Inmate No. 06411-041
        United States Penitentiary
        P.O. Box 26030
        Beaumont, TX 77720
        Plaintiff *pro se*

    ROSLYNN R. MAUSKOPF
        United States Attorney
        Eastern District of New York
        One Pierrepont Plaza, 14th Floor
        Brooklyn, NY 11201
    By:   Gail A. Matthews
        Attorney for Defendants Michael Zenk, Linda Thomas, and Carlos Duff

    CRONIN & BYCZEK LLP
        1983 Marcus Avenue -- Suite C-120
        Lake Success, NY 11042
    By:   Rocco G. Avallone
        Attorneys for Defendant Kelly Tassio

    JAMES J. KEEFE, PC
        1399 Franklin Avenue
        Garden City, NY 11530
        Attorney for Defendant Salvatore LoPresti

JOHN GLEESON, United States District Judge:

        Emile Mark Dixon, a federal prisoner, brings this *pro se* action for money

damages against five current and former employees of the Federal Bureau of Prisons ("BOP"), in their individual and official capacities, pursuant to the principles of *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). In substance, Dixon claims the defendants violated his rights under the Due Process Clause of the Fifth Amendment by (a) wrongfully detaining him in the Special Housing Unit ("SHU") of the Metropolitan Detention Center in Brooklyn, New York ("MDC") and (b) not allowing him to be heard to protest that placement. The defendants move pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) to dismiss the complaint.[1] For the reasons set forth below, I grant the motions in part and deny them in part. Specifically, the complaint is dismissed except insofar as it states a timely procedural due process claim against Michael Zenk in his individual capacity.

BACKGROUND

Dixon alleges that each of the defendants "violated [his] liberty interests and procedural due process rights[] [b]y subjecting [him] to atypical conditions, and [depriving him of] the right to be heard." Compl. 3, 4, 5. In particular, Dixon claims that on April 9, 2002, while he was incarcerated at the MDC awaiting trial, he was transferred from the general population to administrative detention in the SHU. *Id.* at 6. According to the complaint, Dixon received a justification for the transfer a week later, in the form of a detention order stating that he was a security risk. *Id.*

The narrative portion of the complaint implies that Dixon did not immediately prosecute administrative challenges to the detention, beyond asking an officer why he had been transferred to the SHU. *Id.* The officer promised to look into the matter but never returned. *Id.*

---

[1] Because Michael Zenk has already filed an answer, he moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c).

As "the weeks" of his detention "became months," however, Dixon says he "began to press the issue" of his transfer and its attendant restrictions "more rigorously, through the remedies available to [him]." *Id.* Dixon explains that he "thought that the matter would [be] resolved shortly." *Id.*

Certain documents appended to Dixon's complaint, however, reflect that he began to seek administrative relief less than two months after his transfer. In one document, entitled "Inmate Request for Informal Resolution" and dated May 28, 2002, Dixon requested a weekly review of his "case" and remarked that he was "being denied adequate access to the Law Library [and his] lawyer[,] among many other things." *Id.* at 14. In another, entitled "Request for Administrative Remedy" and dated May 29, 2002, Dixon stated that his detention was based solely on the fact that he risked capital punishment for the crime with which he was charged; asserted that he was not a risk to security; noted that the SHU denied him the "rights and privileges [he] should and would have access to [were he] in general population;" and requested transfer out of the SHU. *Id.* at 15-16.

Dixon did not obtain relief from the BOP. His "Request for Administrative Remedy" was denied by Warden Michael Zenk, *see id.* at 17, and his appeal to the regional director of the BOP was likewise denied. *See id.* at 18-20. In addition, Dixon claims, each of the defendants repeatedly denied other requests by him to return to the general population and for relief from the restrictions on his liberty. *See id.* at 8 (claiming Zenk "constantly denied" those requests "both orally and in writing, again and again, whenever the warden made his weekly visits and I inquired about my situation."); *id.* (claiming former Associate Warden Linda Thomas also denied Dixon's requests); *id.* at 9 (claiming former Captain Salvatore LoPresti also

3

denied Dixon's requests); *id.* (claiming former Lieutenant Kelly Tassio also denied Dixon's requests); *id.* (claiming former Unit Manager Carlos Duff "constantly" denied Dixon's requests). Dixon alleges that if the defendants permitted him to plead his case at all, they gave only cursory responses to his inquires. *See id.* at 8 (claiming Zenk would reply only that Dixon's "status remain[ed] the same"); *id.* (claiming Thomas "merely state[d] that he [*sic*] would house [Dixon] wh[ere]ever he [*sic*] deems appropriate."); *id.* at 9 (claiming LoPresti "directly refused to give [Dixon] any form of interviews, so that he might rate [Dixon's] progress"); *id.* (claiming Duff "refused to tell [him] how [his] case was being reviewed or gave ambiguous answers" and told Dixon he "was not allowed to take part or make any statements in [the review] proceedings"); *see also id.* (claiming Tassio "failed to follow proper policy and procedure").

Dixon claims that as he prosecuted his administrative remedies, he explained to the authorities that the length and severity of his detention was affecting his psychological and physical health. *See id.* at 6-7. The complaint itemizes various restrictions special to Dixon's administrative detention: he "had no access to the law library;" he had "limited" telephone and in-person communication with his lawyers and family (he was required to make appointments with his children two to three weeks in advance); his wrists were cuffed whenever he left his cell; he was "locked down" for 23 hours of the day in a constantly lit cell; and he had almost "no formal or informal interviews" and no psychiatric evaluations. *Id*. at 7.

Ultimately, Dixon claims, he "exhaust[ed] all avenues" of relief. *Id.* at 8. He then "approached a captain" to further inquire about his situation. *Id.* The captain promised to speak with the prosecutor assigned to Dixon's case, but Dixon heard no word back, and "after about 18 months" in the SHU, Dixon was transferred back to the general population of the MDC.

4

*Id.*

The original complaint in this action was signed by Dixon on May 12, 2005; received by the Pro Se Office of this Court on May 20, 2005; and filed with the Clerk of this Court on June 29, 2005. The original pleading specifically named only Zenk as a defendant; it identified the other four defendants only by their positions and the filler name "John Doe." On October 23, 2006, United States Magistrate Judge Lois Bloom directed the United States Attorney to identify the John Doe defendants and provide their addresses for service. Upon counsel's compliance with that order, Judge Bloom amended the caption of the complaint on October 30, 2006 to reflect the names of the remaining defendants.

## DISCUSSION

A.  *Standard of Review*

Motions to dismiss pursuant to Rule 12(b)(6) and Rule 12(c) test the legal, not the factual, sufficiency of a complaint. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) ("When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."); *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000) ("At the Rule 12(b)(6) stage, '[t]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims.'" (quoting *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998)); *see also Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994), *cert. denied*, 513 U.S. 816 (1994) (standards of review of motions pursuant to Rule 12(c) and Rule 12(b)(6) motions are identical). Accordingly, I must in general accept the factual allegations in the

complaint as true. *See Bell Atl. Corp. v. Twombly,* 127 S. Ct. 1955, 1965 (2007).

The plaintiff is not entitled to unlimited favorable inferences at the motion to dismiss stage, however. The Supreme Court recently held that the standard governing a complaint's legal sufficiency is in part one of "plausibility." *Id.* at 1968. This standard replaced the admonition of *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." The new plausibility standard "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) (italics omitted) (interpreting *Twombly*).

Nevertheless, as the Court has even more recently stated, "a document filed pro se is 'to be liberally construed,' and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

In deciding the defendants' motion, I may consider documents attached to the complaint as exhibits. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).

B.   *The Timeliness of Dixon's Claims*

The defendants each move for dismissal principally on the ground that Dixon's claims are time-barred because his complaint was filed too late. The limitations period for *Bivens* actions, like those pursuant to 42 U.S.C. § 1983, is determined by reference to the most analogous statute of limitations of the state in which the action is brought. *See Chin v. Bowen*, 833 F.2d 21, 24 (2d Cir. 1987). In New York, the applicable statute is N.Y. C.P.L.R. § 214(5),

6

which establishes a three-year limitations period for general claims of personal injury. *Id.* The defendants argue that Dixon's claims are all untimely because this action was filed with the Clerk on June 29, 2005, a date more than three years after the April 9, 2002 date on which Dixon claims he was transferred to the SHU. As discussed below, this argument has two flaws, but neither flaw is fatal. Accordingly, I grant the motion in part.

First, the defendants mistakenly calculate the date on which Dixon commenced this action. The timeliness of a *pro se* action by a federal prisoner is not determined by reference to the date the action was filed, as the defendants assume. Rather, the relevant date is when the complaint was put into the prison mailing system. District courts in this circuit routinely apply this "prison mailbox rule" in determining when civil rights actions by prisoners have commenced. *See, e.g.*, *Bordas v. Greiner*, No. 04 Civ. 8904(AKH), 2006 WL 2935298, at *2 (S.D.N.Y. Oct. 12, 2006); *Garraway v. Broome County*, No. 5:03-CV-0681, 2006 WL 931729, at *3-*4 (N.D.N.Y. Apr. 7, 2006); *Johnson v. Coombe*, 156 F. Supp. 2d 273, 277 (S.D.N.Y. 2001). Use of the mailbox rule "is justified by the litigant's dependence on the prison mail system and lack of counsel to assure timely filing with the court." *Noble v. Kelly*, 246 F.3d 93, 97-98 (2d Cir. 2001) (per curiam) (collecting cases applying the rule), *cert. denied*, 534 U.S. 886 (2001). Dixon signed the complaint at issue on May 12, 2005. It was received by the Pro Se Office on May 20, 2005. Obviously, it was entrusted to the prison mail system at some point in between those dates, but I have no indication of when. Consistent with my duty to draw all reasonable inferences from the complaint in Dixon's favor, when "it is not clear when the plaintiff gave his complaint to prison officials, '[a]bsent evidence to the contrary, the Court assumes that [the prisoner] gave his petition to prison officials for mailing on the date he signed

7

it.'" *Johnson*, 156 F. Supp. 2d at 277 (quoting *Torres v. Irvin*, 33 F. Supp. 2d 257, 270 (S.D.N.Y. 1998)). On that assumption, I conclude that this action was commenced, for timeliness purposes, on May 12, 2005.

Second, the defendants mistakenly contend that *all* of Dixon's claims accrued on the date he was transferred to the SHU. They are correct with respect to at least one of the claims, and I turn to that one first. Federal law determines when civil rights actions accrue. *See Connolly v. McCall*, 254 F.3d 36, 41 (2d Cir. 2001). Under the law of this circuit, a claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1156 (2d Cir. 1995) (citation omitted); *see also Pearl v. City of Long Beach*, 296 F.3d 76, 79-80 (2d Cir. 2002), *cert. denied*, 538 U.S. 922 (2003). I agree with the defendants that Dixon had reason to know of an injury to his liberty interests when he was transferred to the SHU and a week later received the detention order stating the reason for the transfer. The complaint reflects that Dixon could not have helped but understand the material difference between general population and confinement in the SHU immediately after his transfer: it references, for example, lock-down for 23 hours every day, constant lighting of Dixon's cell, and handcuffing while outside the cell. Compl. 7. Accordingly, because Dixon commenced this action on May 12, 2005, slightly more than one month after the three-year anniversary of his transfer to the SHU, I agree that Dixon's claims for relief from the injury to his liberty from that transfer are time-barred.[2] The motion to dismiss that claim is granted.

---

[2] Defendants Zenk, Thomas, and Duff rely on Dixon's administrative filings reciting the liberties infringed by his placement in the SHU to establish that he had knowledge of his injury, but those documents are dated May 28 and 29, 2002. The relevant question is whether Dixon knew of his injury on or before May 12, 2002, three years before the date he signed the complaint.

Dixon argues in his opposition papers that this result is unjust, since he delayed commencement of this action only because "the defendants led [him] to believe that the matter [of his detention] would be resolved shortly." Pl. Br. 5. It was only after "week[s] [led] to months," Dixon says, that he realized a quick resolution was not forthcoming from the BOP, and so he began to pursue his administrative remedies. *Id.* Translating Dixon's straightforward argument into legal jargon, he asks that I equitably estop the defendants from asserting a defense based upon the statute of limitations because he delayed filing suit in reliance on their misrepresentation that they would resolve this matter themselves. *See Buttry v. Gen. Signal Corp.*, 68 F.3d 1488, 1493 (2d Cir. 1995) (plaintiff seeking to apply equitable estoppel must establish reasonable reliance on defendant's misrepresentation to his detriment).

The defendants urge me to reject this argument because Dixon "was aware of all of the critical facts underlying his claim in April 2002." Letter of Gail A. Matthews, July 23, 2007. This misses the point; the doctrine of equitable estoppel, when it is available, applies to save a claim despite the plaintiff's knowledge of his injury. *See Buttry*, 68 F.3d at 1493 ("A defendant may be equitably estopped from asserting the statute of limitations in cases *where the plaintiff knew of the existence of his cause of action* but the defendant's conduct caused [the plaintiff] to delay in bringing his lawsuit." (citations and internal quotation marks omitted) (emphasis added)). Nevertheless, I agree that equitable estoppel is inappropriate here, because the administrative documents attached to the complaint belie Dixon's claim that he relied upon the defendants' alleged representation to his detriment. Those documents establish that Dixon began to pursue his remedies with the BOP on May 28 and 29, 2002, under two months after his transfer into SHU. *See* Compl. 14-16. Lacking any allegation of actual reliance, I must attribute

9

the delay in commencing this action to Dixon, not the defendants.[3]

I now take back up the topic I put aside above: the defendants' assumption that all of Dixon's claims accrued on the date of his transfer to the SHU. This assumption is incorrect because, in addition to claiming deprivations of his liberty from the transfer, Dixon also claims -- repeatedly -- that he was deprived of his "right to be heard" to protest his administrative detention. Compl. 3, 4, 5. The complaint specifically charges that LoPresti "directly refused to give [Dixon] any form of interviews, so that he might rate [Dixon's] progress." *Id.* at 9. And it alleges that Duff "refused to tell [Dixon] how [his] case was being reviewed or gave ambiguous answers" to Dixon's questions, and told Dixon that he "was not allowed to take part or make any statements in [the review] proceedings." *Id.* In the context of such allegations, I construe Dixon's more general complaints that the defendants, including Warden Zenk, "constantly" denied his requests for relief to be to claims that these defendants summarily denied those requests without the procedure Dixon was due. *Id.* at 8 (claiming Zenk "constantly denied" Dixon's requests "both orally and in writing, again and again, whenever the warden made his weekly visits and I inquired about my situation").

These claims about the denial of certain post-deprivation hearings accrued, by definition, only after Dixon's transfer to the SHU on April 9, 2002. It is not plain from the face of the complaint precisely when the complained-of incidents occurred, but as Dixon alleges they happened "constantly," I infer they continued until Dixon's release 18 months after his transfer,

---

[3] Dixon also invokes the equitable tolling doctrine, arguing that "[t]he defendants in this case hid their wrongdoing from [him] by telling him that he was being placed in administrative detention because he was a security risk." Pl. Br. 4. But, as I have explained, it is Dixon's awareness of the fact of his injury -- not the reason for his injury -- that starts the limitations clock, and the fact of his injury was apparent to him from the start. The complaint makes no plausible allegation of fraudulent concealment.

*i.e.*, until a date in or around October 2003. To the extent the incidents took place after May 12, 2002 -- three years prior to the commencement of this action -- the procedural due process claims arising out of those incidents are not time-barred. I therefore deny the motion to dismiss these claims.

One further point: The timely procedural due process claims are not made timely by reference to a "continuing violation" sourced in the April 9, 2002 transfer. *See Cornwell v. Robinson*, 23 F.3d 694, 703-04 (2d Cir. 1994) (delay of accrual when injury results from a continuing practice and policy of discrimination). Rather, they are separate claims that are timely because their predicate injuries were allegedly inflicted after May 12, 2002.[4] The defendants' arguments that I should not toll the statute of limitations on a continuing violation theory are thus beside the point.

C. *The Timeliness of the Amendment of the Complaint*

The former John Doe defendants move for dismissal on timeliness grounds because their names were not added to the caption until Judge Bloom's order of October 30, 2006. This is granted. The Second Circuit has repeatedly made clear that "replacing 'John Doe' with a named party in effect constitutes a change in the party sued." *Aslandis v. U.S. Lines, Inc.*, 7 F.3d 1067, 1075 (2d Cir. 1993). As a consequence, such an amendment must be timely, and "[i]t is familiar law that 'John Doe' pleadings cannot be used to circumvent statutes of limitations." *Id.* Here, the amendment on October 30, 2006 was untimely. Dixon does not allege he was denied any hearings after he was transferred back to the MDC's general population

---

[4] I do not address whether the procedural due process injuries are *themselves* a "continuing violation," or, rather, discrete injuries. *See Remigio v. Kelly*, No. 04 CIV 1877JGKMHD, 2005 WL 1950138, at *10 (S.D.N.Y. Aug. 12, 2005) (finding procedural due process claims timely as both continuing violation and as discrete violations).

11

"18 months" after his transfer into the SHU on April 9, 2002. Compl. 8. Eighteen months after April 9, 2002 is October 9, 2003, which is more than three years prior to October 30, 2006.[5] So the addition of Thomas, Duff, Tassio, and LoPresti to the caption of the complaint occurred outside the statute of limitations.

The only way to save an otherwise untimely amendment is through relation-back pursuant to Fed. R. Civ. P. 15(c) when the real name was omitted due to mistake. *See Aslandis*, 7 F.3d at 1075; *see generally Steiner v. City of New York*, 920 F. Supp. 333 (E.D.N.Y. 1996). Relation-back cannot save Dixon, however, because the purpose of the October 30, 2006 amendment was not to correct a mistake but to correct a lack of knowledge. *Barrow v. Wethersfield Police Dept.*, 66 F.3d 466, 470 (2d Cir. 1995), *modified*, 74 F.3d 1366 (2d Cir. 1996) ("Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities.").

Dixon is fortunate that he named Zenk in his original complaint. Had he not, his entire case would have been dismissed merely because he knew the titles but not the proper names of the prison officials who allegedly denied him the opportunity to be heard. The current state of the law appears to countenance no exception to this result, even for a prisoner who (as this case illustrates) depends upon the court's investigative powers to discover the names of the people he has sued as "John Does." Moreover, the repeated adjournments sought by and granted to the United States Attorney to answer or move in this action, which delayed the amendment of the caption beyond the limitations period, does not qualify as an "extraordinary" circumstance

---

[5] Counsel stated at oral argument that Dixon was transferred out of the SHU on September 2, 2003.

that warrants equitable tolling. *See Belot v. Burge*, 490 F.3d 201, 205 (2d Cir. 2007) (equitable tolling available only in extraordinary circumstances when claimant pursues claim with reasonable diligence). A case very similar to Dixon's might warrant some softening of these principles.[6] But I need not explore that issue in this case because the complaint will not be dismissed as to Zenk, whose personal participation Dixon alleges by name. Accordingly, the complaint is dismissed as against all the defendants except Zenk.

C.      *Sovereign Immunity*

The defendants move pursuant to Fed. R. Civ. P. 12(b)(1) to dismiss Dixon's claims against them in their official capacities. This is granted. In general, federal employees have sovereign immunity against constitutional torts. *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994). Dixon alleges no waiver of sovereign immunity with respect to his claims. I therefore lack subject matter jurisdiction over the claims against all the defendants in their official capacities.

CONCLUSION

For the reasons discussed above, the motions to dismiss Dixon's claim relating to the injury to his liberty from his transfer to the SHU are granted; the motions to dismiss Dixon's procedural due process claims arising out of injuries inflicted after May 12, 2002 are denied; the motions by Thomas, Duff, Tassio, and LoPresti to dismiss the complaint for failure to timely

---

[6] At least one court in this circuit has permitted relation-back when the defendant refused to provide identifying information timely requested by the plaintiff. *See Byrd v. Abate*, 964 F. Supp. 140, 145-46 (S.D.N.Y. 1997) ("To hold that Rule 15(c) does not permit relation back in such circumstances would permit defense counsel to eliminate claims against any John Doe defendant merely by resisting discovery requests until the statute of limitations has ended.").

amend the complaint are granted;[7] and the motions to dismiss the complaint as against all the defendants in their official capacities is granted. The timely procedural due process claims against Zenk in his personal capacity remain pending.

So ordered.

John Gleeson, U.S.D.J.

Dated: Brooklyn, New York
August 20, 2007

---

[7] I therefore have no need to consider their remaining arguments for dismissal.